**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**Lindsey L.-S.,**

                         **Plaintiff,**

    **v.**                                               **6:18-CV-572
                                                                           (TJM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**
_____

**THOMAS J. McAVOY,
Sr. U. S. District Judge**

## DECISION & ORDER

Plaintiff Lindsey L.-S. brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security denying her application for benefits. Plaintiff alleges that the Administrative Law Judge's decision denying her application for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    PROCEDURAL HISTORY**

On April 22, 2015, Plaintiff applied for Supplemental Security Income ("SSI") benefits through the Social Security Administration. She alleged a disability beginning April 29, 2011. The Administration initially denied Plaintiff's application on August 24, 2015. Thereafter, Plaintiff filed a written request for hearing on September 21, 2015. Administrative Law Judge ("ALJ") Kenneth Theurer held a video-conference hearing on

1

September 20, 2017. ALJ Theurer on November 7, 2017 found that Plaintiff was not disabled from her application date through the date of the decision. Plaintiff appealed this determination to the Appeals Council of the Social Security Administration. The Appeals Council denied Plaintiff's request for review on April 23, 2018. Plaintiff made a timely application to US District Court. This Court has jurisdiction over the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **FACTS**

The Court will assume familiarity with the facts and set forth only those facts relevant to the Court's decision.

Plaintiff alleges disability due to: bipolar disorder; anxiety; depression; degenerative disc disease and herniated discs in her back; asthma; chronic obstructive pulmonary disease; Klippel-Feil Syndrome[1]; carpal tunnel syndrome; an atrial septal defect; and a slight tear in her right shoulder. Social Security Administrative Record ("R."), dkt. # 8, at

---

[1]The National Institutes of Health explain that:

Klippel Feil syndrome (KFS) is a congenital, musculoskeletal condition characterized by the fusion of at least two vertebrae of the neck. Common symptoms include a short neck, low hairline at the back of the head, and restricted mobility of the upper spine. This syndrome can cause chronic headaches as well as pain in both the neck and the back. Other features may involve various other body parts or systems. Sometimes, KFS occurs as a feature of another disorder or syndrome, such as Wildervanck syndrome or hemifacial microsomia. In these cases, people have the features of both KFS and the additional disorder. KFS may be caused by mutations in the GDF6 or GDF3 gene and inherited in an autosomal dominant manner; or, it may be caused by mutations in the MEOX1 gene and inherited in an autosomal recessive manner. Treatment is symptomatic and may include medications, surgery, and/or physical therapy.

https://rarediseases.info.nih.gov/diseases/10280/klippel-feil-syndrome. Reviewed on 9/13/19.

34-35.

## III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The question before the ALJ was wether Plaintiff was disabled under Section 1615(a)(3)(A) of the Social Security Act. The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether a claimant qualifies for disability benefits. See R. at 34-48.

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ applied these five steps. At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 22, 2015, the application date. Id. at 36. The ALJ considered Plaintiff's posted earnings and new-hire wage information together with the evidence as a whole. Id. At Step 2, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine and lumbar spine, mild carpal tunnel syndrome, headaches, shoulder impairment, bipolar disorder, depressive disorder, and anxiety. Id. At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of a listed impairment in 20 C.F.R. 416.920(d), 416.925, and 416.926. Id. at 37.

3

At step four, the ALJ held that Plaintiff had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). Id. at 39-40. Plaintiff could lift and/or carry ten pounds occasionally, sit for six hours, and stand and/or walk for two hours in an eight-hour day with normal breaks. Id. at 39. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. Id. She needed to alternate between sitting and standing two times per hour for no more than five minutes while remaining on task. Id. She retained the ability to understand and follow simple instructions and directions, perform simple tasks with intermittent supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and relate to and interact with other coworkers to the extent necessary to carry out simple tasks. Id. at 39-40. She is able to complete simple tasks without the need for frequent supervision and can interact with supervisors on an intermittent basis throughout the workday and can handle reasonable levels of work-related stress in that she can make simple decisions directly related to the completion of her tasks in a stable, unchanging work environment. Id. at 40. The ALJ used a two-step process to make this determination. First, the ALJ considered whether an underlaying medically determinable physical or mental impairment could reasonably be expected produce the Plaintiff's symptoms. Id. Next, the ALJ evaluated the intensity, persistence, or functionally limiting effects of the symptoms. Id. This evaluation came from a consideration of all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. Id.

The ALJ also found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

4

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Id. at 40. Among other items, the ALJ considered the MRI of Plaintiff's cervical spine performed in May 2014, January 2016 and January 2017, the MRI of Plaintiff's lumbar spine performed in July 2010 and August 2015, Plaintiff's treatment notes and medical reports, the MRI of Plaintiff's brain performed in January 2016, the MRI of Plaintiff's right shoulder performed in May 2015, Plaintiff's clinical findings during neurological examination, Plaintiff's pulmonary function test performed in September 2015, Plaintiff's clinical findings during the consultative examination in August 2015, Plaintiff's mental status exam in May 2015, Plaintiff's reports on her daily activities, and the opinion of consultative examiner Elke Lorensen, MD, an opinion the ALJ gave great weight. Id. at 44. The ALJ also gave great weight to the opinion of State Agency psychological consultant Vigita Reddy, PhD. Id. at 46. Conversely, the ALJ afforded little weight to the testimony of Plaintiff's treating physician, Nathaniel Gould, MD and her nurse, David Campola, NP, who was not a medical professional. Id. at 45. The ALJ also assigned little evidentiary weight to the medical opinions of Plaintiff's treating psychologist David Stang, PhD. Id. at 45-46. The ALJ found this opinion was not supported by the evidence of the record. Id. at 45-46. "In sum, the above residual functional capacity assessment is supported by the diagnostic images, the clinical findings during mental status exams and physical exams, Dr. Lorensen's opinion, and Dr. Reddy's opinion." Id. at 47.

Finally, the ALJ addressed the step-five determination of Plaintiff's ability to work considering her residual functional capacity, age, education, and work experience. Id. at 48. The ALJ employed the Medical-Vocational guidelines of 20 C.F.R. Part 404, Subpart

P, Appendix 2 (2015). Id. Determining that testimony of the vocational expert was consistent to the evidence of record, the ALJ concluded there were ample jobs available which Plaintiff could perform. Id. Based upon this five-step evaluation, the ALJ found that Plaintiff was not disabled. Id. at 49.

## IV.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401,

91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V. ANALYSIS

Plaintiff alleges two sets of errors in the ALJ's opinion, which the Court will address in turn.

### A. Weight given to different medical opinions

Plaintiff first argues that the ALJ erred in assigning little evidentiary weight to the opinions of her treating physician, Dr. Nathaniel Gould, MD, NP David Compola, and her treating psychologist, David Stang, PhD. She also contends that the ALJ erred by giving great weight to the opinion of an consultative physician, Dr. Elke Lorensen, and a consultative psychologist, Vigita Reddy, PhD. Plaintiff argues that the ALJ improperly discounted the opinions of her treating physicians and psychologist in favor of the consultative examiners.

Normally, an ALJ is required to find a treating physician's opinion controlling when

7

the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight.'" Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133. "'[T]o override the opinion of the treating physician, we have held that the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

### i. Dr. Gould

Plaintiff objects to the limited evidentiary weight the ALJ provided to Dr. Gould's opinion that should could "lift five pounds, stand or walk for 30 minutes at a time for a total

8

of three hours in an eight-hour day, and sit for 20 minutes at a time for a total of three hours in an eight-hour day." R. at 45. In addition, Dr. Gould found that Plaitniff would have "to lie down intermittently throughout the day," and could only "occasionally climb, balance, kneel, crouch, crawl, and stoop[.]" Id. She also suffered from "mild limitations in reaching, handling, fingering, and feeling" and "would be of[f] task at least 25% of the time and would be absent more than four days per month." In explaining the weight he provided to Dr. Gould's opinion, the ALJ concluded that "it is not supported by the objective medical evidence, including the diagnostic images or the clinical findings during physical examinations." Id. "Moreover," the ALJ found, "this opinion is inconsistent with other opinion evidence of record, including Dr. Lorensen's examining source opinion." Id.

The ALJ's opinion reviewed the diagnostic images documenting Plaintiff's issues with her cervical and lumbar spine. Id. at 40-41. The ALJ also noted Plaintiff's complaints of pain over a period of several years, the results of medical examinations related to that pain, and the results of medical examinations testing her movement and flexibility. Id. at 40-41. The ALJ also pointed to a number of examinations where the Plaintiff displayed normal "gait and station," "normal muscle strength and tone," "full range of motion of her shoulders, elbows, wrists, or fingers bilaterally," and "no strength deficits in her upper extremities[.]" Id. at 41. Those medical findings, the ALJ concluded, "suggest that the claimant has no significant limitations for standing, walking, or using her upper extremities." Id. Likewise, another examination in January 2017 found Plaintiff "gait and stance were normal and she had no strength deficits," findings that "suggest that the [plaintiff] has no significant functional limitations." Id. The ALJ also pointed out that Dr. Lorensen's August 2015 examination of Pliantiff did "not support the [plaintiff's] allegations regarding the

9

severity of her conditions," and described the findings of that examination. Id. at 42.

The Court finds that the ALJ had substantial evidence for the weight he afforded Dr. Gould's opinions. The ALJ pointed to medical evidence in the record that indicated that Dr. Gould overstated Plaintiff's limitations, noting that the history of Plaintiff's limitations demonstrated that she had more flexibility, strength, range of motion, and ability to walk without limitation than Dr. Gould indicated. The ALJ also pointed to Dr. Lorensen's physical examination in finding that the record supported fewer limitations than Dr. Gould suggested. The ALJ provided a sufficient explanation for the weight provided Dr. Gould's position, and the Plaintiff's motion will be denied in this respect.

### ii. Campola

The ALJ also granted "little evidentiary weight" to the opinion of David Campola, NP, who treated Plaintiff for pain management. R. at 45. Campola had concluded that Plaintiff could "lift five pounds or less, stand and/or walk for ten minutes at a time for a total of one hour or less in an eight-hour day, and sit for 30 minutes at a time for a total of one hour or less in an eight-hour day." Id. The ALJ found that Campola "suggests that the [Plaintiff] is only able to stand, walk, and sit for a combined total of two hours in an eight-hour period, which implies that she is essentially bed-ridden." Id. For Campola, Plaintiff could "never . . . climb, balance, kneel, crouch, crawl, or stoop." Id. Her limitations in "reaching, handling, and fingering" were "severe." Id. Because of Plaintiff's pain, fatigue, and inability to concentrate, she would 'be off task at least 50% of the time.'" Id. She would need to miss four days a month. Id. As with Gould's opinion, the ALJ found that Campola's limitations were "not supported by the objective medical evidence, including the diagnostic images or the clinical findings during physical examinations." Id. Other opinion evidence also

contradicted Campola's findings." Id.

The Defendant argues that Campola is not a treating physician as defined by social security regulations and is therefore not entitled to the same level of deference as a treating physician.  The Social Security regulations in place at the time Plaintiff filed her claim gave "controlling weight" to the opinion of a treating physician if that physician's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927.  Those regulations, however, excluded a nurse practitioner from the definition of "acceptable medical source."  20 C.F.R. § 404.1502 (a)(7).  Under those circumstances, Campola's opinion "can be considered when determining the severity of the claimant's impairment and ability to work but are not necessarily entitled to controlling weight."  Fax. v. Comm'r of Soc. Sec., No. 1:14-cv-00530 (MAD), 2015 U.S. Dist. LEXIS 81592 at *8 (N.D.N.Y,. June 24, 2015).  Thus, "while the ALJ is certainly free to consider the opinions of [a nurse practitioner] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating phyisician."  Genier v. Astrue, 298 Fed. Appx. 105, 108 (2d Cir. 2008).

Even using the more difficult and deferential standard afforded a treating physician, the ALJ had substantial evidence for his decision to give only limited weight to Campola's opinion.  As with Gould, the ALJ cited to evidence in the record that allowed for fewer limitations on Plaintiff's activities than Campola did.  The evidence cited by the ALJ, including Lorensen's examination and evaluation of Plaintiff, provides substantial evidence for finding fewer restrictions than Campola found.  The ALJ explained the basis for his opinion, and the Court finds that opinion supported by substantial evidence.  The Plaintiff's

11

motion will be denied in this respect as well.

### iii. Dr. Lorensen

Dr. Elke Lorensen, MD., a consultative examiner, prepared an internal medicine examination of Plaintiff on August 17, 2015. See R. at 702-07. Lorensen reported that the New York State Officer of Disability Determination referred Plaintiff to him for a physical examination. Id. at 702. According to Lorensen, Plaintiff had a diagnosis of neck pain, back pain, headaches and right shoulder pain. Id. at 705. Lorensen interviewed Plaintiff, who complained of the pains described previously, told Lorensen of her current medications and reported her activities of daily living. Id. at 702-03. Lorensen concluded from the physical examination that Plaintiff had "[n]o gross limitations sitting, standing, walking, and handling small objects with the hands. Moderate restrictions bending, lifting, reaching, turning the head." Id. at 705. Plaintiff complains that Dr. Lorensen did not treat her and that his speciality is vascular surgery. She does not complain of a vascular condition.

The ALJ read Dr. Lorensen's opinion to be "that the claimant has no limitations for sitting, standing, walking, or handling small objects," but "moderate limitations for bending, lifting, reaching, and turning her hear." R. at 44. The ALJ gave the opinion "great weight." Id. The opinion, the ALJ found, deserved such weight "because it is a medical opinion and is supported by Dr. Lorensen's findings upon examining the claimant." Id. In concluding that Dr. Lorensen's findings were supported by the medical evidence, the ALJ pointed to Dr. Lorensen's findings concerning Plaintiff's gait, ability to squat, lack of assistive devices in walking, range of motion and flexibility, ability to stand, the stability and tenderness of her joints, range of motion, and finger dexterity. Id.

12

As with his other conclusions regarding the medical opinions, the ALJ had substantial evidence to support his conclusion that Lorensen's opinion deserved great weight. Plaintiff points out that Lorensen's specialty is vascular medicine, a specialty that does not focus on her back, neck, and other mental and physical issues. Still, Lorensen was able to perform a medical exam and offer an opinion. The ALJ explained how Lorensen's opinion found support in the medical record and in his own examination, and how that consistency explained the weight he provided to Lorensen's opinion. The Court will deny the Plaintiff's motion in this respect as well.

### iv. Stang

The ALJ provided little evidentiary weight to the opinion of Dr. Stang, who concluded that Plaintiff suffered from "moderate limitations in her ability to interact with others, adapt or manage herself, effectively function independently, consistently maintain personal appearance, and function reliably." Id. at 45. He also found that she had "marked limitations in her ability to behave predictably and reasonably and appropriately deal with stress." Id. She also suffered from "mild limitations in her ability to understand, remember, and apply information, use good judgment, concentrate, persist, and maintain pace." Id. at 45-46. Dr. Stang concluded that Plaitniff would likely miss more than four days per month and be off task from work more than 50% of the time in an eight-hour workday. Id. at 46. He reported that Plaintiff suffered from depression and anxiety, causing her difficulty in functioning and managing stress. Id. This condition, Stang found, also placed "marked restrictions" on Plaintiff's "activities of daily living and maintaining social functioning." Id.

In limiting the weight accorded that opinion, the ALJ pointed to record evidence in the form of "clinical findings during mental status examinations." Id. During examinations,

the ALJ pointed out, Plaintiff was reported to be "cooperative, but guarded"; she had normal speech and motor activity; she had an appropriate affect; though "anxious," she was "alert, and fully oriented." Id. She had normal "content and perceptions," and could concentrate and pay attention. Id. She was "above-average" in intelligence, had "intact" judgment, and did not express any suicidal or homicidal ideations. Id. Beyond these initial examinations in mid-2015, the ALJ noted, "Dr. Stang's subsequent progress notes do not contain clinical findings and merely recite the claimant's subjective complaints, which focused on marital discord, divorce, custody, and visitation issues, and problems with her boyfriend's children." Id.

Here again the ALJ explained the weight he gave to Sang's opinion by citing evidence in the medical record that contradicted the limitations that Sang assigned Plaintiff in his report. The ALJ had substantial evidence for the weight assigned to Sang's report, and the Court will deny the Plaintiff's motion in this respect as well.

### v. Reddy

The Plaintiff also contends that the ALJ provided too much weight to opinion of Virginia Reddy, PhD, who served as a non-examining state-agency source on Plaintiff's mental condition. Reddy, "a State Agency psychological consultant," reviewed Plaintiff's file and concluded "that the [plaintiff] has moderate limitations in her ability to interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others." Id. at 46. At the same time, Reddy found that Plaintiff suffered "no limitations in her ability to understand, remember, and sustain

14

concentration, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, or use public transportation." Id.

The ALJ gave "great weight" to Dr. Reddy's opinion on Plaintiff's mental residual function capacity. Id. That weight, the ALJ concluded, came because Dr. Reddy offered a "medical opinion . . . supported by the clinical findings during mental status examinations." Id. The ALJ pointed to mental status examinations described above, which showed that, despite difficulties with stress, Plaintiff demonstrated the ability to concentrate and interact with people, was of "above-average" intelligence, and did not demonstrate any suicidal or homicidal intentions. Id. at 46. All of this evidence, the ALJ concluded, provided support in the record for Reddy's opinions.

As with the other opinion testimony, the Court finds that the ALJ had substantial evidence to support his conclusions about the evidentiary weight to be assigned Reddy's opinions. The ALJ pointed to record evidence that supported his conclusions about that testimony, noting that Plaintiff's affect and appearance in mental-health examinations demonstrated that she could function and interact with others in the workplace. The ALJ explained the weight provided Reddy's opinion, and had substantial evidence to do so. The motion will be denied in this respect as well.

**B.     Date of Onset**

As a basis for remand beyond the ALJ's alleged failure to provide proper weight to the opinion evidence, the Plaintiff contends that the ALJ failed to consider evidence which might indicate that Plaintiff's condition had worsened since she initially filed her application

15

for benefits in 2015. She points to a January 5, 2016 cervical spine MRI that demonstrated allegedly new injuries, points out that the consultative examiner did not have this information in preparing his report, and contends that the ALJ erred by failing to consider whether Dr. Lorensen's report was adequate given this new information. If the ALJ had considered a later date than April 22, 2015 as the onset date, she argues, the ALJ would have been able to address more clearly whether Plaintiff's condition had worsened.

In determining Plaintiff's impairments, the ALJ noted that:

X-rays of the claimant's cervical spine performed in August 2011 showed narrowing at the C6 level and mild multilevel instability. An MRI of the claimant's cervical spine performed in May 2014 showed disc herniations at the C3-C4, C5-C6 and C6-C7 levels and congenitally fused C2-C3 vertebrae, which is consistent with Klippel-Feil syndrome. An MRI of her cervical spine performed in January 2016 showed no acute injury, congenital fusion of the skull base and C1 and C2/C3, with stable basilar invagina. The MRI showed stable herniations at C3-C4, C4-C5, C5-C6, and C6-C7, stable mild to moderate foraminal stenosis at the C3-C4, C4-C5, and C6-C7 levels, and stable, mild reversal of the cervical lordosis. An MRI performed in January 2017 showed similar findings with no significant changes. She complains of headaches, but neurological exam results were normal.

R. at 37. In assessing Plaintiff's Residual Functional Capacity at Step 4 of the analysis, the ALJ repeated these assessments of Plaintiff's cervical spine issues, as well as his assessment of her lumbar spine problems and other mobility issues. Id. at 40-41. The ALJ concluded that "[t]he claimant's neck and back impairment would be expected to cause her some functional limitations for lifting, carrying, standing, walking, and performing postural activities, which are acounted for in the above-defined-residual functional capacity." Id. at 41. The ALJ also pointed to evidence showing that "the claimant's treatment notes indicate that her back pain resolved after an epidural steroid injection in August 2015." Id. In providing little weight to Dr. Gould's and NP Campola's opinions, the ALJ cited these images, including those produced in 2016 and 2017, finding that their opinions were "not

16

supported by the objective medical evidence, including the diagnostic images or the clinical findings during physical examinations." Id. at 45.

The Court finds it clear from the record that the ALJ considered the most recent diagnostic imagery in establishing Plaintiff's RFC and in evaluating the expert reports. The ALJ, as explained above, explicitly cited that imagery in establishing the Plaintiff's RFC. The ALJ found that such imagery supported Dr. Lorensen's conclusions and undermined those of Dr. Gould and NP Campola, noting that the diagnostic imagery supported findings of pain and limitation, but that the same imagery did not support the greater restrictions posed by Plaintiff's experts. The ALJ also noted that Dr. Lorensen's findings were not based on a reading of the medical file or on a simple examination of diagnostic reports, but on an examination of the Plaintiff. As such, the ALJ had substantial evidence, which included the diagnostic reports from 2016 and 2017, and used that evidence, in assessing the experts and the Plaintiff's RFC. The Court will deny the Plaintiff's motion in this respect as well.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED.** The Commissioner's motion for judgment on the pleadings is **GRANTED**. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated: September 13, 2019

Thomas J. McAvoy
Senior, U.S. District Judge